AO 91 (Rev. 11/11) Criminal Complaint                     AUSA Nina Ruvinsky (312) 886-5966

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA

v.

AIDEN ALEJANDRO

CASE NUMBER: 26 CR 299



FILED  LM
6/16/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about May 13, 2026, at Stickney, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| Title 18, United States Code, Section 922(o) | possession and transfer of a machinegun |

This criminal complaint is based upon these facts:

  _X_  Continued on the attached sheet.

PATRICK FAHEY (Affiliate)
Digitally signed by PATRICK FAHEY (Affiliate)
Date: 2026.06.16 10:57:13 -05'00'

PATRICK FAHEY
Task Force Officer, Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: June 16, 2026  11:00am

_____
*Judge's signature*

City and state: Chicago, Illinois

ALBERT BERRY III, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, PATRICK FAHEY, being duly sworn, state as follows:

1. I am a Chicago Police Officer and have been so employed since October of 2003. Since January of 2018, I have been deputized as a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"). My current responsibilities include the investigation of federal firearms offenses, including unlawful transfer and possession of machine guns.

2. This affidavit is submitted in support of a criminal complaint alleging that Aiden Alejandro has violated Title 18, United States Code, Section 922(o). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging AIDEN ALEJANDRO with transferring and possessing a machine gun, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. The statements in this affidavit are based on multiple sources, including but not limited to: my personal knowledge; my review of reports and documents related to this investigation; my review of video recordings related to this investigation; conversations with others who have knowledge of the events and circumstances described in this affidavit; my review of law enforcement databases;

1

my training and experience and the training and experience of other agents with whom I work; statements made by ALEJANDRO, and information provided to me by persons with knowledge regarding relevant facts.

## I. SUMMARY OF PROBABLE CAUSE

4. In summary, and as set forth in more detail below, between approximately May 13, 2026, and May 18, 2026, ALEJANDRO sold approximately three firearms and one machinegun conversion device (MCD) on two different occasions to ATF Confidential Sources ("CS-1")[1] and ("CS-2").[2]

5. More specifically, and as set forth in more detail below, prior to and during each of the two transactions, ALEJANDRO met with one and/or both CSs at the same meeting location, his apartment residence, located at 6921 Pershing Road, Apartment 1B, Stickney, Illinois, 60402 (the "**Subject Premises**").[3] During the two transactions, ALEJANDRO met with the CS(s) in the hallway/stairway of the

---

[1] CS-1 has worked with the ATF for approximately three years and has two prior firearms-related felony convictions. CS-1 is cooperating with ATF in exchange for monetary consideration and has been paid approximately $26,700 for aiding ATF investigations. Law enforcement believes CS-1 to be a reliable source of information because information provided by CS-1 has been corroborated by recorded communications and surveillance and has led to the seizure of firearms.

[2] CS-2 has worked with ATF on various occasions in exchange for monetary compensation since 2017 and has been paid approximately $150,350 for aiding ATF investigations. CS-2 has prior felony convictions for Armed Robbery/No Firearm, Aggravated Unlawful Use Weapon/Vehicle, Possession of a Controlled Substance (Cocaine 15<100). CS-2 is working with ATF for monetary reasons since 2017. Law enforcement believes CS-2 to be a reliable source of information because information provided by CS-2 has been corroborated by recorded communications and surveillance and has led to the seizure of firearms and controlled substances.

[3] A search warrant was issued to search the **Subject Premises**. *See* 26M396 (Holleb Hotaling, M.J., June 9, 2026). The search warrant was executed on June 15, 2026.

**Subject Premises**, and exchanged firearms, firearm parts/accessories for money with the CS(s). Immediately following the transactions, the CS(s) left the **Subject Premises** (common area) and ALEJANDRO remained.

### *May 13, 2026 sales of two firearms and one MCD*

6. According to CS-1, from approximately May 6, 2026, to May 13, 2026, CS-1 communicated with ALEJANDRO through recorded telephone calls and Facebook communications. During the Facebook communication, ALEJANDRO utilized the Meta Facebook account 61583447282385, username "Cblockk Marlo" (the "**Subject Account**"),[4] and sent CS-1 approximately one photograph and two videos depicting firearms believed to be for sale. Law enforcement later reviewed the Facebook communication. ALEJANDRO also provided the cellular telephone number (872) 354-6342 (the "**Subject Phone**") to CS-1.[5]

---

[4] A warrant was issued to search this Facebook account. *See* 26M394 (Holleb Hotaling, M.J., June 9, 2026). Warrant returns are forthcoming. As noted in the warrant application to search this Facebook account, on or about May 18, 2026, law enforcement reviewed the publicly accessible Facebook account Cblockk Marlo (the **Subject Account)**. Law enforcement observed the publicly accessible profile and photos. Some of those photos capture a person who appears to be ALEJANDRO based upon his features, including the distinctive tattoos, possessing firearms. On or about May 26, 2026, law enforcement observed that a photograph had been added to the **Subject Account** by CBlockk Marlo on or about May 23, 2026 that I believe also depicts ALEJANDRO. During the post-*Miranda* interview discussed below, ALEJANDRO confirmed this to be his Facebook account.

[5] A warrant was issued to search and seize the **Subject Phone**. *See* 26M292 Holleb Hotaling, M.J., June 9, 2026). The Subject Phone was seized from another occupant of the residence, Female A, at approximately the time of ALEJANDRO's detention on June 15, 2026, and a search of the device is forthcoming. Following the seizure of the Subject Phone, law enforcement called the phone number associated with the Subject Phone, which promptly rang with the agent's phone number. During the post-*Miranda* interview discussed below, ALEJANDRO identified this this as his phone, identifying his phone as an iphone with a red case. Based on my training and experience, there is probable cause to believe that the text messages sent from the Subject Phone that are described here in were sent by ALEJANDRO.

7.      On or about May 12, 2026, CS-1 sent ALEJANDRO at the **Subject Phone** a text message stating, "What for sale" and "I got $." ALEJANDRO, replied from the **Subject Phone** with a price and description of the items for sale, stating, "A real arp and I got everything for it scope shell catcher 1200." Based upon my experience in this and other investigations, I believe "Arp" is a common term used to describe an AR-style pistol.

8.      At approximately 4:00 p.m. on May 12, 2026, CS-1 and ALEJANDRO conducted a Facebook Facetime/video call which lasted approximately six minutes. According to CS-1 and my review CS-1's partial video recording of that Facetime/video call, ALEJANDRO, identified in part by his distinct neck tattoos, displayed portions of an AR-style pistol and also stated "it's got the serial numbers sanded off."

9.      At approximately 4:17 p.m. on May 12, 2026, CS-1 placed a recorded call to the **Subject Phone**. During this call, CS-1 asked ALEJANDRO where the firearms transaction would take place. ALEJANDRO provided CS-1 with an address of 6921 Pershing Road.[6]

10.      On or about May 13, 2026, CS-1 and CS-2, while equipped with recording devices, traveled together to meet with ALEJANDRO for the purpose of purchasing a firearm and firearm accessories from ALEJANDRO for $1,250.00. Prior

---

[6] As further described below, according to government databases, on March 26, 2026, ALEJANDRO was issued a Temporary Illinois driver's license indicating his address was 6921 Pershing Rd, Apt 1B, Stickney, IL 60402 (the **Subject Premises**). The address of the **Subject Premises** also appears in Chicago Police Department (CPD) records as ALEJANDRO's residence.

to the transaction, law enforcement searched CS-1, CS-2 and the undercover vehicle ("UCV") they used to travel to and from the meeting with ALEJANDRO for contraband and excessive amounts of money with negative results. Law enforcement provided buy money to CS-1 and CS-2.

11. At approximately 1:36 p.m. on May 13, 2026, CS-1 and CS-2 got out of the UCV and entered the courtyard of the **Subject Premises**. Once in the courtyard, CS-2 stated "6921 AB," which was transmitted to surveillance agents to inform them that CS-1 and CS-2 were approaching a building marked 6921 AB.

12. According to the CS's, they entered the **Subject Premises** hallway and met with ALEJANDRO and Individual A. According to CS-1 and CS-2, ALEJANDRO handed CS-1 a blue bag containing a firearm, magazine, shell catcher, and loose ammunition in exchange for $1,250.[7] CS-1 provided the buy money to ALEJANDRO.

13. According to CS-1 and CS-2, after the first purchase was completed by CS-1, CS-2 asked ALEJANDRO about additional firearms available for sale. ALEJANDRO advised he did not have any additional firearms available for purchase. According to CS-2, he observed a firearm in ALEJANDRO's pants and inquired about buying that firearm. According to CS-2, ALEJANDRO related that he did not want to sell the firearm but had a "button."[8] According to CS-2, CS-2 informed

---

[7] ALEJANDRO sent a text message requesting an additional $50 for the shell catcher through text messaging on the way to the transaction. Based on my experience and training, I know that a shell catcher is a net attached to a firearm intended to capture shell casings as they are expended from the firearm when it is being fired. Retention of shell casings impedes law enforcement from linking crime scenes involving the discharge of firearms to a particular weapon.

[8] Based upon my training and experience, "button" is a slang term for an MCD.

ALEJANDRO they would purchase the firearm ALEJANDRO possessed and the button for $1,400. ALEJANDRO agreed to conduct the transaction.

14. According to CS-2, ALEJANDRO went up the stairs and entered an apartment labeled "1B."[9] ALEJANDRO returned shortly after and provided CS-2 with three pieces of an MCD[10] and a firearm in exchange for $1,400.

15. After the transaction was complete, law enforcement again searched CS-1, CS-2, and the UCV for contraband and excessive amounts of money with negative results and recovered the purchased firearms and accessories.

16. Law enforcement later determined the firearm sold to CS-1 by ALEJANDRO was an Anderson Manufacturing model AM-15 pistol with a defaced serial number; and that the firearm sold to CS-2 was a GLOCK GMBH, model: 23 pistol bearing serial no. RBE618.

### May 18, 2026 sale of one firearm

17. On or about May 14, 2026, according to CS-1, ALEJANDRO sent CS-1 a photograph of a distinctive blue and black AR-style pistol with the message "1100$

---

[9] During the transaction, as ALEJANDRO went into the apartment, CS-2 text messaged "1B" to surveillance agents monitoring the transaction to inform them which apartment ALEJANDRO had entered. An undercover law enforcement agent confirmed that "1B" appeared on the knocker on the door of an apartment where the transactions with ALEJANDRO occurred.

[10] These three parts are sufficeint to form a complete MCD. On or about June 1, 2026, law enforcement provided a photograph of the purchased and recovered MCD to personnel at the ATF Firearms & Ammunition Technology Division. After viewing the photograph, a preliminary determination was made that the device is consistent in size, shape, and configuration with all other Machingun Conversion Devices of this type ("Glock Switches") that they have encountered as a Firearms Enforcement Officer. Additional confirmatory analysis is forthcoming.

762" from the **Subject Account**. A photograph of the message on CS-1's cellphone, indicating it came from the **Subject Account**, is provided below.[11]



18.    On or about May 17, 2026, CS-1 sent a text message to ALEJANDRO at the **Subject Phone** stating, "Let me get that arp tomorrow around 3-330?"

---

[11] CS-1 sent a photograph of the text messages on his phone to a law enforcement agent.

ALEJANDRO, using the **Subject Phone**, replied, "Aight bet folkkz just hml[12] you alr know where im at amo."

19. On or about May 18, 2026, at approximately 12:18 p.m., CS-1 placed a recorded call to the **Subject Phone**. During this call, CS-1 arranged for CS-2 to conduct the transaction with ALEJANDRO without CS-1 present.

20. At approximately 1:30 pm, CS-2 sent a text message to the **Subject Phone** to ask ALEJANDRO if he was "still good to link" at approximately "3." A short time later ALEJANDRO, using the **Subject Phone**, replied, "Yea brudda just hml same shit as last time."

21. CS-2 and an undercover Police Officer ("UCO") were equipped with recording devices for the purpose of purchasing a firearm from ALEJANDRO for $1,100. Prior to the transaction, law enforcement searched CS-2 and the UCV for contraband and excessive amounts of money with negative results. Law enforcement provided buy money to CS-2.

22. At approximately 3:45 p.m. on May 18, 2026, CS-2 and the UCO arrived in the area of the **Subject Premises** in the UCV. According to CS-2 and the video recording, CS-2 entered the courtyard of the **Subject Premises** and approached a glass exterior door labeled "6921 AB."

23. At approximately 3:47 p.m., CS-2 entered the glass exterior door. According to CS-2 and the recording, ALEJANDRO was standing at the top of the

---

[12] Based on my training and experience, "hml" is an acronym for "hit my line," meaning to contact the party through their cellphone.

stairs holding a white garbage bag. According to the recording, CS-2 approached ALEJANDRO and ALEJANDRO placed the bag on the floor, appearing to show its contents to CS-2, at which time a portion of the AR-style pistol was visible. A snapshot from a video recording of the transaction below depicts the trigger and distinctive blue frame of the weapon, as well as the distinctive tattoo on ALEJANDRO's left hand.[13]



24. According to CS-2, a firearm, bullets and a magazine were contained in the white bag. CS-2 took possession of the white bag and gave ALEJANDRO $1,100.

---

[13] The yellow circle in this image was added by law enforcement.

The snapshot below from the video recording depicts ALEJANDRO holding the cash provided to him by CS-2 in exchange for the firearm and is juxtaposed with a photograph from ALEJANDRO's temporary Illinois driver's license. ALEJANDRO's distinctive neck tattoo is visible in both images.



25. ALEJANDRO remained in the common area of the **Subject Premises** as CS-2 departed.

26. After the transaction was complete, law enforcements again searched CS-2 and the UCV for contraband excessive amounts of money with negative results. Law enforcement also recovered the white trash bag and contents, including the gun.

27. Law enforcement later determined that the firearm ALEJANDRO sold to CS-2 was a pistol manufactured by an unknown party, model: P80, 762 caliber, with no serial number. The ammunition purchased from ALEJANDRO was determined to be three rounds of 300 caliber ammunition. The firearm sold by ALEJANDRO to CS-2 is depicted below.[14]



*June 5, 2026, two firearms available for purchase*

28. On or about June 5, 2026, CS-2 received a text message from telephone number (708) 762-4306 (the "Second Phone").[15] The text message related it was being

---

[14] The magazine was removed and zip-tied to the stock of the firearm by law enforcement subsequent to its purchase from ALEJANDRO.

[15] The Second Phone was also seized during the execution of the search warrant on the Subject Premises on June 15, 2026. It has not been searched. Th Second Phone phone was recovered from a table in ALEJANDRO's bedroom, as identified by him during the execution of the Search Warrants. Law enforcement called the Second Phone number and observed it displaying the law enforcement officer's telephone number.

sent by CS-1's "homie" (understood by CS-2 and law enforcement to be ALEJANDRO) and that the phone (the **Subject Phone**) was turned off. Following the message, CS-2 received the below two photographs from the Second Phone depicting firearms:

 

29. CS-2 asked "how much" (to purchase the firearms). CS-2 received a message in reply asking, "How much you a offer." CS-2 sent a text message asking, "What's the ticket Brody i can prob slide on Sunday browdy." The Second Phone also sent a text message stating, "What you spend then I'll tell you my price I'm tryna work with you on price range this raw shit so lmk (let me know)."

30. On or about June 6, 2026, CS-2 sent the Second Phone a message stating, "2K," meaning CS-2 would purchase the two firearms for $2,000. CS-2 also sent a message stating, "Bet lmk yo price." CS-2 did not receive a response to these messages.

***Interstate or Foreign Commerce***

31. On or about June 1, 2026, a certified interstate nexus ATF Special Agent ATF examined the Glock and Anderson Manufacturing firearms and determined that

they were both manufactured outside of the state of Illinois prior to being purchased from ALEJANDRO.

### *ALEJANDRO is not authorized to sell firearms or machineguns*

32. Based on my training and experience, I know that federal law requires those engaged in the business of dealing in firearms to be licensed by ATF. According to information received from the ATF Federal Firearms Licensing Center, ALEJANDRO does not possess a valid Federal Firearms License (FFL). Additionally, according to law enforcement databases, ALEJANDRO does not possess a valid Illinois Firearms Owners Identification (FOID) card or Concealed Carry License (CCL).

33. Based on my training and experience, I know that, subject to certain limited exceptions not applicable here, individuals are not permitted to transfer or possess machine guns. *See* 18 U.S.C. § 922(o). Pursuant to 26 U.S.C. § 5845(b):

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

Based on my training and experience, I know that a "button" or "switch" is an MCD that meets this definition of a machinegun.

*June 15, 2026 Search and Seizure Warrant Execution*

34.     On June 15, 2026, after several hours of surveillance of the **Subject Premises**, at approximately 2:30 p.m., law enforcement executed search warrants 6M395 and 26M395.  Search warrant 26M395 was for the **Subject Premises** and search warrant 26M395 was for Aiden ALEJANDRO's person. *See* 26M395 (Holleb Hotaling, M.J., June 9, 2026).

35.     During the execution of the residential search warrant, ALEJANDRO was located inside of the residence and detained by law enforcement.  During the search of the residence, law enforcement located and recovered two firearms (depicted below), as well as firearm parts and accessories.

 

36.     The two firearms recovered during the search appear to be the same two firearms ALEJANDRO sent pictures of to CS-2 on or about June 5, 2026 from the Second Telephone Number, depicted below:



37. At approximately 3:34 p.m., ALEJANDRO and the recovered evidence were transported to the ATF Chicago Field Office for further investigaiton and processing. ALEJANDRO arrived at ATF's Field Office at approximately 4:02 p.m. At approximatley 5:17 p.m., ALEJANDRO was read a US Department of Justice/ATF Advice of Rights and Waiver Form, after which ALEJANDRO acknoledged his rights, signed the waiver and agreed to speak with law enforcement.

38. During the interview, law enforcement informed ALEJANDRO that they had previoulsy recovered two firearms and a "switch" (machinegun conversion device, MCD) that law enforcement believed he had sold to another individual. Law enforcment asked ALEJANDRO if he knew what a "switch" was. ALEJANDRO replied he did and stated words to the effect of, "a piece to make a gun automatic."[16] Law enforcement related "it" (the switch) makes "it" (the gun) fully automatic and goes on the back of a gun and is also called "buttons," to which ALEJANDRO replied

---

[16] This interview was video and audio recorded but has not yet been transcribed. The statements relayed herein are an approximation of what was said.

yes. ALEJANDRO also told law enforcement agents that he was previously arrested with one (a switch), also that stated that the MCD he sold (to CS-2) did not work.

## II. CONCLUSION

39. Based on the information above, Affiant submits that there is probable cause that, on or about May 13, 2026, AIDEN ALEJANDRO transferred and possessed a machine gun, in violation of Title 18, United States Code, Section 922(o).

FURTHER AFFIANT SAYETH NOT.

PATRICK FAHEY (Affiliate) Digitally signed by PATRICK FAHEY (Affiliate)
Date: 2026.06.16 10:56:27 -05'00'

PATRICK FAHEY
Task Force Officer, Bureau of Alcohol,
Tobacco, Firearms & Explosives

SWORN TO AND AFFIRMED by telephone June 16, 2026.

Honorable JUDGE ALBERT BERRY III
United States Magistrate Judge